UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| FELIPE N. GOMEZ, )<br>)<br>    Plaintiff, )<br>)<br>v. )<br>)<br>)<br>DEPT. OF HOMELAND )<br>SECURITY/USA, et al., )<br>)<br>    Defendants, ) | Civil Action No. 1:24-cv-03517 (UNA) |

## MEMORANDUM OPINION

This matter is before the court on plaintiff's *pro se* complaint ("Compl."), ECF No. 1, and application for leave to proceed *in forma pauperis* ("IFP"), ECF No. 2. The court grants the IFP application and dismisses this case without prejudice for the reasons discussed below.

First and foremost, plaintiff has failed to state a claim. To sufficiently state a claim upon which relief can be granted, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). A complaint is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. Relevant here, Federal Rule 12(b)(6) authorizes dismissal of claims without any legal basis, "without regard to whether [the claims are] based on an outlandish legal theory or on a close but ultimately unavailing one." *Neitzke v. Williams*, 490 U.S. 319, 327 (1989); *see also Baker v. Dir., U.S. Parole Comm'n*, 916 F.2d 725, 727 (D.C. Cir. 1990) (per curiam) (authorizing *sua sponte* dismissal for failure to state a claim). Further, The IFP statute requires dismissal of a case "at any time" the court determines that a complaint fails to state a claim upon which relief may be granted, *see* 28 U.S.C. §§ 1915(e)(2)(B)(ii). Here, even in affording plaintiff "the benefit

of all inferences that can be derived from the facts alleged," *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994), his complaint falls short of stating an actionable claim.

Plaintiff a resident of Chicago, sues the United States, the U.S. Department of Homeland Security ("DHS"), the State of Illinois and its Governor, the City of Chicago and its Mayor, and the State of Texas and its Governor, seeking equitable relief. *See* Compl. at 1, 3–4, 16–17. He alleges that his rights have been violated by (1) Chicago's enactment of "The Welcoming City Ordinance," *see id*. at 2, 7, 14, which regulates Chicago agencies' requests or disclosures of information, or the conditioning of benefits, based upon a person's citizenship or immigration status, and limits their enforcement of federal civil immigration law, *see* Chi. Mun. Code § 2-173-005 *et seq*., and (2) Illinois's enactment of the "Trust Act," *see* Compl. at 2–3, which stipulates that local police shall not carry out federal immigration detainers or warrants unless they are signed by a judge, *see* 5 ILCS 805/1 *et seq*. Plaintiff contends that, Illinois, though these laws, and Texas, more generally, have unlawfully "assisted" "illegal migrants into the USA[,]" and that both those states have unnecessarily expended public funds on the immigrants' livelihood by permitting them to reside in respective "sanctuary jurisdictions." *See* Compl. at 1, 3–4, 8, 14. Plaintiff challenges the noted regulations and demands a writ of mandamus compelling "DHS and those acting under them to immediately, within 7 days of order, to take all appropriate action to enforce 8 U.S.C. [§] 1324 and related immigration laws." *See id.* at 1, 4, 15–17.

Sprinkled throughout the complaint are labels, phrases, and citations that suggest legal claims, yet the pleading nonetheless fails to state a cognizable legal claim against any of the defendants. Plaintiff relies most predominantly to 8 U.S.C. § 1324, *see id.* at 1–4, 6, 16–17, which governs criminal penalties for bringing certain aliens to the United States or harboring them here, *see* 8 U.S.C. § 1324 *et seq*., and it does not create a private right of action, *see Chavez v. Freshpict*

*Foods, Inc.*, 456 F.2d 890, 893–94 (10th Cir. 1972), *cert. denied*, 409 U.S. 1042 (1972); *Lopez v. Arrowhead Ranches*, 523 F.2d 924, 926 (9th Cir. 1975) (per curiam); *Flores v. George Braun Packing Co., Division of Leonard & Harral Packing Co.* 482 F.2d 279, 280 (5th Cir. 1973) (per curiam). Likewise, plaintiff cites to 18 U.S.C. §§ 371, 1505, and 1519, *see* Compl. at 1, 6, 8, which are bare federal criminal statutes that also fail to afford a private right of action, *see Rockefeller v. Tacha*, No. 03-5076, 2003 WL 21973346, at *1 (D.C. Cir. Aug.12, 2003) (no private right of action under 18 U.S.C. § 371) (per curiam), *cert. denied*, 541 U.S. 1031 (2004); *Johnson v. Williams*, 699 F. Supp. 2d 159, 164 n.5 (D.D.C. 2010) (same), *aff'd sub nom. Johnson v. Fenty*, No. 10–5105, 2010 WL 4340344 (D.C. Cir. Oct. 1, 2010) (per curiam); *Boling v. United States Parole Commission*, 290 F. Supp. 3d 37, 46–47 (D.D.C. 2017) (same), *aff'd*, No. 17-5285, 2018 WL 6721354 (D.C. Cir. Dec. 19, 2018) (per curiam); *Banks v. Kramer*, No. 09-5140, 2009 WL 5526780, at *1 (D.C. Cir. Dec. 30, 2009) (per curiam) (no private right of action under 18 U.S.C. § 1505), *cert. denied*, 562 U.S. 970 (2010); *Peavy v. Holder*, 657 F. Supp. 2d 180, 190–91 (D.D.C. 2009) (no private right of action under 18 U.S.C. §§ 1505, 1519), *aff'd*, No. No. 09-5389, 2010 WL 3155823 (D.C. Cir. Aug. 9, 2010) (per curiam); *North v. Smarsh, Inc.*, 160 F. Supp. 3d 63, 77 (D.D.C. 2015) (no private right of action under 18 U.S.C. § 1519); *see also Prunte v. Universal Music Group*, 484 F. Supp. 2d 32, 42 (D.D.C. 2007) ("the Supreme Court has refused to imply a private right of action in 'a bare criminal statute'").

Plaintiff next relies on 42 U.S.C. §§ 1983 and 1985.[1] *See* Compl. at 1, 5–6. To state a § 1983 claim, plaintiff must allege that he was "deprived of a right secured by the Constitution or

---

[1] Defendants the United States and DHS are both immune from suit under any provision of the Civil Rights Act. *See Boling v. U.S. Parole Comm'n*, 290 F. Supp. 3d 37, 50 (D.D.C. 2017), *aff'd*, No. 17-5285, 2018 WL 6721354 (D.C. Cir. Dec. 19, 2018) (per curiam), *cert. denied*, 140 S.Ct. 268 (2019).]; *Hohri v. United States*, 782 F.2d 227, 245 n. 43 (D.C. Cir. 1986) (same), *vacated on other grounds*, 482 U.S. 64 (1987).

laws of the United States, and that the alleged deprivation was committed under color of state law." *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49–50 (1999).  Here, plaintiff quite broadly asserts that, under the U.S. and Illinois constitutions, he bears the right to ensure that [sic] "officials obey Federal laws, and of the right to be free of the threat of illegal gangbangers and other malcreant migrants destroying the USA from within[,]" *see* Compl. at 1, 7, but such allegations fail to implicate any actual fundamental constitutional or federal statutory right.

And to state a claim under § 1985, a plaintiff must preliminarily "allege facts that show an actual conspiracy. . . [including] (1) an agreement between two or more persons; (2) to participate in an unlawful act, or a lawful act in an unlawful manner; (3) an injury caused by an unlawful overt act performed by one of the parties to the agreement; (4) which overt act was done pursuant to and in furtherance of the common scheme." *Prince v. Dist. of Columbia*, No. 22-746, 2022 WL 17415058, at *4 (D.D.C. Dec. 5, 2022) (quoting *Halberstam v. Welch*, 705 F.2d 472, 477 (D.C. Cir. 1983) (internal quotation marks omitted)), *aff'd*, No. 22-7165, 2023 WL 6938135 (D.C. Cir. Oct. 19, 2023) (per curiam).  Plaintiff does not clear this preliminary bar.  He does not allege any facts to establish, or even infer, the existence of a conspiracy, instead merely reciting the language of the statute.  *See* Compl. at 6.  Conclusory allegations of conspiracy "without factual support, such as events, conversations, or documents indicating that there was ever an agreement or meeting of the minds between any of the defendants[,] . . . are insufficient." *Prince*, 2022 WL 17415058, at *4 (collecting cases) (internal quotation marks omitted); *see also Iqbal*, 556 U.S. at 678–79 (a complaint must offer more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action," and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.") (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

Similarly, plaintiff cites to 18 U.S.C. § 1961, the Racketeer Influenced and Corrupt Organizations Act ("RICO"). *See* Compl. at 5–6. A plaintiff bringing a civil RICO claim must allege that (1) a person or persons (2) associated with an enterprise (3) conducted (4) the affairs of the enterprise (4) through a pattern (5) of racketeering activity. *Bates v. Nw. Human Servs., Inc.*, 466 F. Supp. 2d 69, 78 (D.D.C. 2006) (citing *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985)). "Racketeering activity" encompasses "any act which is indictable" under a specific list of federal criminal offenses known as "predicate offense[s]." 18 U.S.C. § 1961(1)(B); *RJR Nabisco, Inc. v. European Cmty.*, 136 S. Ct. 2090, 2096–97 (2016). Plaintiff does not so much as specify the predicate acts upon which his purported RICO allegations are based. Additionally, to plead a "pattern of racketeering activity," a plaintiff must specifically allege "at least two acts of racketeering activity . . . within ten years." *Center for Immigration Studies v. Cohen*, 2019 WL 4394838 at *6 (D.D.C. 2019) (citing 18 U.S.C. § 1961(5)). "In addition to the requisite number of predicate acts, the plaintiff must [also] show 'that the racketeering predicates are related, and that they amount to or pose a threat of continued criminal activity.'" *Edmondson & Gallagher v. Alban Towers Tenants Ass'n*, 48 F.3d 1260, 1264 (D.C. Cir. 1995) (quoting *H.J. Inc. v. N.W. Bell Tel. Co.*, 492 U.S. 229, 239 (1989)). Here, plaintiff has not supplied any of this required information. *See Edmondson & Gallagher v. Alban Towers Tenants Ass'n*, 48 F.3d 1260, 1263 (D.C. Cir. 2019) (listing factors).

Plaintiff last relies on the federal mandamus statute. *See* Compl. at 1, 4, 15–16. The extraordinary remedy of a writ of mandamus is available to compel an "officer or employee of the United States or any agency thereof to perform a duty owed to plaintiff." 28 U.S.C. § 1361. A plaintiff bears a heavy burden of showing that his right to a writ of mandamus is "clear and indisputable." *In re Cheney*, 406 F.3d 723, 729 (D.C. Cir. 2005) (citation omitted). "It is well-

settled that a writ of mandamus is not available to compel discretionary acts." *Cox v. Sec'y of Labor*, 739 F. Supp. 28, 30 (D.D.C. 1990) (citing cases). "[M]andamus is 'drastic'; it is available only in 'extraordinary situations.'" *Cheney*, 406 F.3d at 729 (citations omitted). Only if "(1) a plaintiff has a clear right to relief, (2) a defendant has a clear duty to act, and (3) there is no other adequate remedy available to the plaintiff," *Thomas v. Holder*, 750 F.3d 899, 903 (D.C. Cir. 2014), is mandamus relief granted. Although plaintiff has baldly recited these elements, he has not actually addressed the merits of any of them, *see* Compl. at 15–16, nor has he provided any supporting authority, thus failing to state a claim.

Finally, the court finds that plaintiff lacks federal standing to bring his claims. "[A] defect of standing is a defect in subject matter jurisdiction." *Haase v. Sessions*, 835 F.2d 902, 906 (D.C. Cir. 1987); *see Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) (noting that "the core component of standing is an essential and unchanging part of the case-or-controversy requirement of Article III"). Article III judicial power exists only to redress or otherwise to protect against actual or imminent injury to the complaining party and a plaintiff generally must assert their own legal rights and interests. *See Moses v. Howard Univ. Hosp.*, 606 F.3d 789, 794–95 (D.C. Cir. 2010); *Singh v. Carter*, 185 F. Supp. 3d 11, 21 n. 4 (D.D.C. 2016). Here, plaintiff alleges no more than a generalized grievance against defendants concerning his disagreement with the alleged misuse of government funds and contravention of various federal laws, *see* Compl. at 2–3, 5, 7–8, 10, 13–14, and a generalized grievance about the conduct of government that is "common to all members of the public" is not enough to satisfy the concrete and particularized injury requirement, *Lujan*, 504 U.S. at 575 (citation omitted). Indeed, "[w]hen 'a plaintiff's asserted injury arises from the government's allegedly unlawful regulation (or lack of regulation) of someone else, much more

is needed' to establish standing," *United States v. Texas*, 599 U.S. 670, 678 (2023) (quoting *Lujan*, 504 U. S. at 562).

This is particularly true in the context of immigration policy, because "courts also generally lack meaningful standards for assessing the propriety of enforcement choices," which are invariably affected by resource constraints and regularly changing public-safety and public-welfare needs. *See id.* at 679–50. Put differently, "[i]f the [c]ourt green-lighted this suit, we could anticipate [third-party] complaints in future years about alleged . . . under-enforcement" of laws in myriad contexts, and asking a federal court for much relief would patently violate the separation of powers. *See id*. at 681. Indeed, for this very reason, the Supreme Court has consistently held that "private persons . . . have no judicially cognizable interest in procuring enforcement of the immigration laws[.]" *See Sure-Tan, Inc. v. NLRB*, 467 U.S. 883, 897 (1984) (citing *Linda R.S. v. Richard D*., 410 U.S. 614, 619 (1973)).

Seemingly anticipating this hurdle, plaintiff attempts to alternatively establish standing as a municipal taxpayer, *see* Compl. at 10–14, who may perhaps, under limited circumstances, sue a municipal government to prevent an illegal disposition of government funds, he has failed to make the "steep climb" to establish such standing. *See Penkoski v. Bowser*, 548 F. Supp. 3d 12, 28 n.16 (D.D.C. 2021). More specifically, a plaintiff alleges municipal standing by establishing that (1) he is a taxpayer of the municipality he wishes to sue; and (2) the municipality actually spent tax dollars on an allegedly illegal action. *See D.C. Common Cause v. District of Columbia*, 858 F.2d 1, 4 (D.C. Cir. 1988). Notably, when "no tax moneys are spent" or if tax money is expended "incidentally," standing is not established. *See id*. at 4–5.

Plaintiff asserts that he is a resident and taxpayer of Chicago, though not of Texas, thus failing to establish his municipal standing against any the Texas-based defendants. *See* Compl. at

11–12, 14–15. As for Illinois and Chicago, plaintiff has failed to clear the second step, *i.e.*, to sufficiently allege that Illinois or Chicago have spent tax revenue to enforce the Welcoming City Ordinance or the Trust Act, respectively. Nor can he, because those regulations are not monetary, they are "prohibitory," serving solely to limit local administrative actions relating to an individual's immigration or citizenship status and taking actions arising therefrom. *See Gomez v. City of Chicago, et al.*, No. 21-cv-06486, at Dismissal Order (entered March 2, 2022), ECF No. 7, at 1; *see also* Chi. Mun. Code § 2-173-005 *et seq.*; 5 ILCS 805/1 *et seq.* Plaintiff's argument that these "inviting" regulations then allegedly result in the outflow of various public funds related to crime enforcement and social spending for the immigrants' subsistence in Chicago, Texas, and Illinois, *see* Compl. at 2–3, 8–11, 14, 16, is the definition of an "incidental expenditure," *see D.C. Common Cause*, 858 F.2d at 4–5.

Accordingly, the complaint, and this case, are dismissed without prejudice. A separate order accompanies this memorandum opinion.

Date: February 16, 2025            /s/
                        RUDOLPH CONTRERAS
                        United States District Judge